SLATER LAW GROUP APC
A Professional Corporation
MARK K. SLATER, SBN 129742
  mslater@slaterlawgrp.com
JUNYONG HUANG-STOWERS, SBN 307178
  jhuang@slaterlawgrp.com
33 New Montgomery Street, Suite 1210
San Francisco, California 94105
Telephone:    (415) 294-7700
Facsimile:     (415) 294-7763

Attorneys for Plaintiff
LOUISE LIND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISE LIND, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CAROLINE GETTY, an individual; and WILD ROSE, LLC, a Washington limited liability company,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>(1) **UNPAID WAGES (Lab. Code §§ 204, 218.5, 218.6);**<br>(2) **FAILURE TO PAY OVERTIME COMPENSATION (Lab. Code §§ 510, 1194, 1198, and IWC Order No. 4-2001);**<br>(3) **FAILURE TO PAY OVERTIME COMPENSATION (29 U.S.C §§ 207, 215);**<br>(4) **FAILURE TO PROVIDE MEAL PERIODS (Lab. Code §§ 226.7, 512, and IWC Order 4-2001);**<br>(5) **FAILURE TO PROVIDE REST PERIODS (Lab. Code § 512 and IWC Order No. 4-2001);**<br>(6) **FAILURE TO PAY MINIMUM WAGE (Lab. Code §§ 1194, 1197, 1197.1, IWC Order 4-2001);**<br>(7) **FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS (Lab. Code § 226);**<br>(8) **VIOLATION OF LABOR CODE § 558.1;**<br>(9) **FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS (Gov. Code § 12940(n));**<br>(10) **FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS (Gov. Code § 12940(m));**<br>(11) **WAITING TIME PENALTIES (Lab. Code §§ 201, 202, 203);** |

**(12) VIOLATION OF UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 *et seq.*); and**

**DEMAND FOR JURY TRIAL**

Plaintiff Louise Lind ("Lind") hereby alleges as follows:

**THE PARTIES**

1. Lind is, and at all relevant times was, an individual residing in Marin County, California.

2. Defendant Caroline Getty is, and at all relevant times was, an individual residing in San Francisco County, California.

3. Lind is informed and believes, and thereon alleges, that Defendant Wild Rose, LLC (together with Caroline Getty, "Getty") is, and at all relevant times was, a Washington limited liability company engaging in investment and charitable giving and doing business in California.

**JURISDICTION AND VENUE**

4. This action arises out of Getty's violations of sections 207, 215, and 216 of the Fair Labor Standards Act ("FLSA"). This Court therefore has original jurisdiction over Lind's FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Lind's California state law claims under 28 U.S.C. § 1367(a) because they are so related to the FLSA claims as to form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in San Francisco County, California, and Defendants are subject to personal jurisdiction in California.

**FACTUAL ALLEGATIONS**

6. Lind has been working as a personal assistant for decades, helping many prominent families manage their household and personal lives. Prior to her employment with Getty, she had successfully served as the personal assistant to a former chief financial officer of one of the largest banking institutions in the United States for 10 years.

7. Defendant Caroline Getty is the granddaughter of Jean Paul Getty, an American petrol-industrialist.

8. Lind is informed and believes, and thereon alleges, that Defendant Wild Rose, LLC is an entity established by Caroline Getty's accounting firm, Moss Adams LLP, to act as a joint employer for Caroline Getty's employees.

9. In 2008, with her former employer's consent, Lind started working as Getty's personal assistant in addition to serving her former employer.

10. Getty was impressed with Lind's work ethic and quality, and continued increasing Lind's hours. In 2011, Lind started working exclusively for Getty on a 30-hour work week schedule.

11. Over the years, Getty has repeatedly acknowledged Lind's impeccable work quality and loyalty to her and her family in letters to Lind, praising Lind as "meticulous in everything" and that she "shine in all the work [she] take[s] on," just to quote a few.

12. Lind's responsibilities included taking care of all aspects of Getty and her family's life, such as bookkeeping, handling mail and deliveries, managing household and office supplies, vacation scheduling, home remodel recordkeeping, and more. Due to Getty's paranoid nature and micromanagement tendencies, Lind was required to report every aspect of her job to Getty, including something as trivial as the content of all phone calls Lind received in the office. As such, Lind had no supervisory authority over any other employees during her employment with Getty, had no authority to make any decisions of consequence without Getty's permission, and rarely exercised discretion and independent judgment in performing the duties of her position.

13. Getty promised Lind that she would only work 30 hours a week, and based on that, Lind agreed to a reduced salary. In 2020, Lind's salary was $165,000, or three-fourths of an annual salary of $220,000, plus a 15% profit sharing of $24,750 and medical benefits.

14. However, this three-quarters arrangement did not reflect the actual hours Lind worked, and Getty continuously violated California labor laws and FLSA during Lind's employment.

15. Lind typically worked five days, or 37.5 hours a week: on Mondays, Wednesdays, and Thursdays, she spent 7 hours working in the office and 1 hour working from home, plus half an hour running errands for Getty; on Tuesdays and Fridays, Lind worked from home for up to 6 hours a day; and Lind worked an additional 3 hours of overtime in January, August, and November of each year to complete donation paperwork for Getty. Due to Getty's erratic schedule, Lind constantly had to work on what were originally scheduled as non-workdays, and also on vacations. However, Lind was only paid for 30 hours of work per week, and received no overtime pay.

16. Even though Lind was technically allowed time off on legal holidays, if the holiday fell on a workday, Lind was required to work an extra day to make up for her time off. Thus, Lind did not actually receive any actual time off for legal holidays.

17. Getty regularly required Lind to work through her meal periods, perform work during her lunch break, remain on-call during her meal period to respond to any demand for assistance that Getty might issue, or otherwise assigned her work in a manner that precluded Lind from taking a duty-free meal period in accordance with the requirements of California law.

18. Getty also failed to provide any rest periods for Lind. The only time Lind was allowed out of the office was to run errands for Getty or to check Getty's mailboxes and Getty consistently assigned work and deadlines that prevented Lind from taking duty-free rest breaks in accordance with the requirements of California law.

19. When Lind was not working, she was on call 24/7 to meet Getty and her family's needs: running errands, answering emails and voicemails, arranging for their European vacations, looking after Getty's home when she was away, etc.

20. Getty willfully and deliberately misclassified Lind as an exempt employee during at least four years prior to the filing of this Complaint, and failed to pay Lind for the additional hours and overtime worked, and premiums for missed meal and rest periods during this time. Throughout Lind's employment, Getty provided Lind with wage statements that did not accurately record all of the items and information required under section 226 of the California Labor Code,

including but not limited to the total hours worked during the pay period, the applicable hourly rates, the applicable number of hours worked at each applicable rate, and the accrued vacation time.

21. In 2018, Lind started experiencing pain in her right hand, which is her dominant hand. It soon developed to a point where she had difficulty lifting heavy files, turning door knobs, turning keys, and performing other daily tasks. The repetitive typing and use of a computer mouse at work further worsened her condition. Surgery was immediately necessary.

22. Getty was well aware of the severe problems with Lind's right hand. On February 27, 2019, Lind informed Getty of her surgeons' diagnosis of her right hand and that her surgery was scheduled for March 19, 2019.

23. However, just before Lind's surgery, Getty asked Lind to update five copies of her address book, which involved editing over 30 pages of Excel spreadsheets, and after Lind had begun on her sick leave. This was particularly bad for Lind's right hand as it required excessive typing and use of a computer mouse. Updating the address book was by no means urgent, and was typically done when Lind was not busy at work.

24. After Lind's surgery, Getty demanded that Lind come back to work on March 28, 2019, giving Lind less than 10 days to recover. Lind protested, informing Getty that she was in a lot of pain, could not drive, was still on pain medication, her arm was unstable, and that she wanted to wait until after she got a cast at her post surgery appointment on April 3. Getty refused to compromise.

25. Under fear of losing her job, Lind started working on March 28. On that day, Getty required Lind to pay her bills, which Lind could only do with her left hand and teeth. On her way home, Lind cried in pain, exhaustion, and humiliation.

26. Getty's pattern of disregarding Lind's medical needs continued. After her first surgery, Lind requested a one-hour lunch break every workday during her recovery period so that she could sufficiently rest her hand, and even offered to start work an hour early. Getty refused Lind's request without any further discussion. As an alternative, beginning in 2020, Lind

1  suggested that she work over the weekend so that she could reduce her workload during the week
2  during her recovery period, making it easier on her hand.  Getty again rejected the proposal with
3  no further discussion or engagement.

4      27.    Due to the lack of accommodation at work, the condition of Lind's right hand
5  worsened in December 2019, and her doctors decided another surgery was necessary.

6      28.    In February 2020, Lind fell on her right hand while delivering mail to Getty's
7  home.  Though her right hand was not fractured, the pain became intolerable.  Lind's second
8  surgery was delayed to June 9, 2020 due to the COVID-19 pandemic, and she continued to work
9  until her surgery.

10     29.    Lind informed Getty of her surgeon's warning against further use of her right hand
11 and that such overuse could risk permanent loss and functionality of her right hand.  Specifically,
12 Lind could not lift heavy things or she would risk further injuring her hand.

13     30.    However, without further inquiry or discussion, Getty required Lind to carry her
14 desktop computer and work materials home on days that Getty wanted to be in the office alone,
15 and to move them back when Lind returned to the office.  Such repeated, unnecessary back-and-
16 forth moving directly violated instructions from Lind's doctors, and further worsened Lind's hand
17 injuries.

18     31.    Shortly before Lind's second surgery, Getty again "pre-loaded" Lind with non-
19 urgent work that further stressed Lind's already compromised right hand.  Getty required Lind to
20 complete 18 grants for her philanthropic work by May 29, 2020, two days before Lind's medical
21 leave, even though no immediate deadlines applied to any of the grants and, in fact, Getty had
22 previously directed that Lind spread this project out over the year, given the lack of urgency.  In
23 addition to the stress of completing this extensive project in a now inexplicably tightened time
24 frame, the project involved an excessive amount of work, typing, and use of a computer mouse, all
25 of which aggravated Lind's condition.

26     32.    Given her age and medical condition, Lind is at a higher risk for severe illness from
27 COVID-19.  But Getty's disregard for Lind's rights and health continued during the pandemic.

1  When California imposed the shelter-in-place order, Getty required that Lind continue to come into the office, even though Lind's work could easily be performed remotely. Getty even told Lind to represent herself as a "bookkeeper" at an "essential business" if anyone at the office building questioned Lind's presence. Getty also required Lind to visit her private P.O. Boxes in four different locations frequently, further exposing Lind to the virus. Getty placed her own convenience above Lind's health and the public's health.

33. As Getty made repeatedly clear that she would not agree to any accommodation Lind needed for the post-surgery recuperation or for the long-term limitations resulting from Lind's condition, Lind had no option but to resign.

34. To date, Lind has not been paid for the additional hours and overtime worked, or any premiums for the meal and rest periods that she was not permitted.

**EXHAUSTION OF REMEDIES**

35. Prior to the filing of this action, Lind adequately filed her complaint with the California Department of Fair Employment and Housing ("DFEH") alleging that the acts of Getty constituted multiple violations of the Government Code. In response, Lind received the Right to Sue Notice from the DFEH against Getty, and subsequently brought this action on a timely basis.

**FIRST CLAIM FOR RELIEF**

**(Unpaid Wages—Against All Defendants)**

**[Lab. Code §§ 204, 218.5, 218.6]**

36. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 35, inclusive, of this Complaint, as though fully set forth herein.

37. Under section 204 of the California Labor Code, all wages earned by any person in any employment are due and payable twice during each calendar month.

38. Since at least four years prior to the filing of this Complaint, Lind consistently worked at least 37.5 hours per week, and 40.5 hours for at least three weeks per year. But she was only paid for 30 hours a week.

39. Getty knowingly and willfully failed to pay Lind for all hours worked.

40. As a result of these violations, Getty is liable for unpaid wages, as well as attorneys' fees, costs, and interest pursuant to sections 218.5 and 218.6 of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

## SECOND CLAIM FOR RELIEF

**(Failure to Pay Overtime Compensation—Against All Defendants)**

**[Lab. Code §§ 510, 1194, 1198; IWC Order No. 4-2001]**

41. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 40, inclusive, of this Complaint, as though fully set forth herein.

42. Section 510 of the California Labor Code and Industrial Welfare Commission ("IWC") Order No. 4-2001 requires that an employer compensate all work performed by an employee in excess of 8 hours per workday and 40 hours per workweek, at one and one-half times the employee's regular rate of pay.

43. Under section 1194 of the California Labor Code, any employee receiving less than the legal overtime compensation is entitled to recover in a civil action the unpaid balance of the full amount of her overtime compensation, including interest, reasonable attorneys' fees, and costs of suit.

44. Since at least four years prior to the filing of this Complaint, Lind worked at least 1.5 hours of daily overtime each week, and an additional three hours of daily overtime during January, August, and November. However, Getty failed to pay the overtime wages that Lind earned.

45. During all relevant times, Getty knowingly and willfully failed to pay overtime earned and due to Lind. Getty's conduct deprived Lind of full and timely payment of all overtime hours worked in violation of the California Labor Code and the IWC Order.

46. As a result of Getty's failure to pay overtime compensation, she is liable to Lind for the unpaid balance of the full amounts of her overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit pursuant to sections 510 and 1194 of the California

1  Labor Code.

2      WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

3  **THIRD CLAIM FOR RELIEF**

4  **(Failure to Pay Overtime Compensation—Against All Defendants)**

5  **[29 U.S.C. §§ 207, 215]**

6-7      47.    Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46, of this Complaint, as though fully set forth herein.

8-9      48.    Getty is, and at all relevant times was, an employer engaged in interstate commerce within the meaning of FLSA.

10-11      49.    29 U.S.C. § 207 requires an employer pay her employee one and one-half times the regular rate for all hours worked in excess of 40 hours per workweek.

12-13      50.    Since at least three years prior to the filing of this Complaint, Lind worked at least 40.5 hours for three weeks each year.

14-16      51.    Getty deliberately and willfully misclassified Lind as exempt from the overtime compensation under the FLSA, in violation of 29 U.S.C. §§ 211(c) and 215(a), and failed to pay Lind for hours worked in excess of 40 hours per workweek.

17-20      52.    As a result of Getty's deliberate misclassification of Lind, and failure to compensate Lind for work performed in excess of 40 hours in a workweek, Getty has violated the FLSA, including 29 U.S.C. §§ 207, 211, and 215, and is liable to Lind for the unpaid overtime compensation as well as liquidated damages pursuant to 29 U.S.C. § 216.

21      WHEREFORE, Lind prays for judgement and relief as set forth in the Prayer below.

22  **FOURTH CLAIM FOR RELIEF**

23  **(Failure to Provide Meal Periods—Against All Defendants)**

24  **[Lab. Code §§ 226.7, 512, and IWC Order No. 4-2001]**

25-26      53.    Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 52, inclusive, of this Complaint, as though fully set forth herein.

27      54.    Both section 512 of the California Labor Code and IWC Order No. 4-2001 require

an employer who employs an employee for a work period of more than five hours per day provide the employee with a meal period of not less than 30 minutes.

55. The employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided, pursuant to section 226.7 of the California Labor Code and IWC Order No. 4-2001.

56. Since at least four years prior to the filing of this Complaint, Getty failed to provide Lind meal periods as required by the California Labor Code and IWC Order, and required Lind to work through her meal breaks. Getty even denied Lind's request for a one-hour lunch break to rest her hand during the recovery period after Lind's hand surgery. However, Getty failed to pay Lind the premiums for the missed meal periods.

57. As a result of Getty's willful and unlawful failure to provide Lind the mandated meal periods or to pay the premiums for the missed meal periods, Lind is entitled to recover one hour of pay at her regular rate of compensation for each workday that a meal period was not provided, plus interest, attorneys' fees, and costs of suit, pursuant to sections 226.7 and 512 of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

### FIFTH CLAIM FOR RELIEF

**(Failure to Provide Rest Periods—Against All Defendants)**

[Lab. Code § 512 and IWC Order No. 4-2001]

58. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 57, inclusive, of this Complaint, as though fully set forth herein.

59. Both section 512 of the California Labor Code and IWC Order 4-2001 require an employer authorize and permit her employee to take rest periods at the rate of 10 minutes net rest time per 4 hours.

60. If an employer fails to do so, she shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided, pursuant to section 226.7 of the California Labor Code and IWC Order No. 4-2001.

61. Since at least four years prior to the filing of this Complaint, Getty failed to provide Lind rest periods as required by the Labor Code and Wage Order, or pay Lind the premiums for the missed rest periods.

62. As a result of Getty's willful and unlawful failure to provide Lind the mandated rest periods, Lind is entitled to recover one hour of pay at her regular rate of compensation for each workday that a rest period was not provided, pursuant to section 512 of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

### SIXTH CLAIM FOR RELIEF

### (Failure to Pay Minimum Wages—Against All Defendants)

### [Lab. Code §§ 1194, 1197, 1197.1; IWC Order 4-2001]

63. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 62, of this Complaint, as though fully set forth herein.

64. Sections 1194, 1197, and 1197.1 of the California Labor Code make it unlawful for an employer to pay an employee lower than minimum wage for any hours worked. IWC Order 4-2001 requires an employer to pay an employee not less than the applicable minimum wage for all hours worked in the payroll period.

65. Lind consistently worked 37.5 hours per week, and 40.5 hours for at least three weeks per year, but Getty only paid Lind for 30 hours every week.

66. As a result of Getty's deliberate failure to pay Lind minimum wages for all hours worked, Lind is entitled to restitution of wages, liquidated damages, a civil penalty of $100 for the initial violation and $250 for each subsequent violation, as well as attorneys' fees and costs pursuant to section 1197.1 of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

///

///

///

**SEVENTH CLAIM FOR RELIEF**

**(Failure to Provide Accurate Itemized Wage Statements—Against All Defendants)**

**[Lab. Code § 226]**

67. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, of this Complaint, as though fully set forth herein.

68. Section 226(a) of the California Labor Code requires an employer furnish to an employee an accurate itemized statement of wages semimonthly or at the time of each payment of wages, which shall include, among other things, the total hours worked by the employee and the hourly rates.

69. Throughout her employment, Lind received wage statements that did not accurately record all of the items and information required under section 226(a) of the California Labor Code, including but not limited to the total hours worked during the pay period, the applicable hourly rates, and the number of hours worked at each applicable rate.

70. As the direct and proximate result of Getty's failure to provide accurate itemized wage statements, Lind suffered actual damages and harm by being unable to determine her total hours worked for each pay period, which prevented her from becoming aware of these violations and asserting her rights under California law.

71. Getty knowingly and intentionally failed to comply with section 226 of the California Labor Code on each and every wage statement provided to Lind.

72. As a result of Getty's wrongful conduct, Lind is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000, and is entitled to an award of costs and reasonable attorney's fees, pursuant to section 226(e) of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

///

///

**EIGHTH CLAIM FOR RELIEF**

**(Violation of Labor Code § 558.1—Against Caroline Getty)**

73. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 72, inclusive, of this Complaint, as though fully set forth herein.

74. Section 558.1 of the California Labor Code provides that a natural person acting on behalf of an employer who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the IWC, or violates, or causes to be violated, sections 203, 226, 226.7, and 1194 of the California Labor Code, may be held liable as the employer.

75. Caroline Getty acted on behalf of Wild Rose, LLC at all times relevant herein.

76. Caroline Getty caused Wild Rose, LLC to violate sections 203, 226, 226.7, and 1194 of the California Labor Code by directing Wild Rose, LLC not to pay Lind for all hours worked or overtime, not to provide Lind with accurate itemized wage statements, and to deny Lind meal and rest periods without paying premiums.

77. As a direct and proximate result of Caroline Getty's wrongful conduct, Lind suffered damages in an amount to be determined at trial. Because Caroline Getty acted on behalf of Wild Rose, LLC, she should be held liable to Lind as the employer.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

**NINTH CLAIM FOR RELIEF**

**(Failure to Engage in An Interactive Process—Against All Defendants)**

**[Gov. Code § 12940(n)]**

78. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 77, inclusive, of this Complaint, as though fully set forth herein.

79. Section 12940(n) of the California Government Code makes it an unlawful employment practice for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations in response to a request for reasonable accommodation by an employee with a known medical condition.

80. Lind started to suffer pain in her right hand in 2018, which continued to worsen and ultimately required multiple surgeries. She kept Getty informed of her condition and requested reasonable accommodations.

81. Getty, however, refused to engage in any good faith, meaningful discussions with Lind about the accommodations she needed for her conditions. When Lind requested a one-hour lunch break to rest her right hand during her recovery period after her hand surgery, Getty rejected the request without any further discussion. As an alternative, and to help her recover, Lind suggested that she work over the weekend in order to reduce her workload during the week, but Getty again rejected the proposal with no further discussion or engagement. She further denied Lind's request to wait an additional four workdays for her cast before returning to work after her first hand surgery, again with no further discussion or engagement.

82. As a direct and proximate result of Getty's wrongful conduct, Lind has suffered and continues to suffer complications in her right hand, has lost and continues to lose past, present, and future earnings, career opportunities, bonuses and other employment benefits. Lind's damages include all consequential, general, and special damages according to proof at trial.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

**TENTH CLAIM FOR RELIEF**

**(Failure to Provide Reasonable Accommodations—Against All Defendants)**

**[Gov. Code § 12940(m)]**

83. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 82, inclusive, of this Complaint, as though fully set forth herein.

84. Section 12940(m) of the California Government Code makes it an unlawful employment practice for an employer to fail to make reasonable accommodation for the known physical disability of an employee.

85. Lind started to suffer pain in her right hand in 2018, which continued to worsen and ultimately required multiple surgeries. She kept Getty informed of her condition and requested reasonable accommodations.

86. Getty, however, made no efforts to accommodate Lind's medical conditions despite multiple requests from Lind.  She gave Lind nonurgent assignments involving intensive typing days before Lind's two surgeries with short deadlines; rejected Lind's request to wait an additional four workdays for her cast before returning to work after her first hand surgery; rejected Lind's request for a one-hour lunch break to rest her right hand even though Lind offered to start working one hour earlier to make up for the break; rejected Lind's request to spread her workload over the weekends during Lind's recovery; required Lind to move her desktop computer and work materials to and from the office on days that Getty felt like being in the office alone; and demanded that Lind come into work less than 10 days after Lind's surgery, over Lind's protest.

87. Getty could have easily accommodated Lind's medical conditions, but willingly and unlawfully refused to do so.

88. As a direct and proximate result of Getty's wrongful conduct, Lind has suffered and continues to suffer complications in her right hand, has lost and continues to lose past, present, and future earnings, career opportunities, bonuses and other employment benefits.  Lind's damages include all consequential, general, and special damages according to proof at trial.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

## ELEVENTH CLAIM FOR RELIEF

**(Waiting Time Penalty—Against All Defendants)**

**[Lab. Code §§ 201, 202, 203]**

89. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 88, inclusive, of this Complaint, as though fully set forth herein.

90. Sections 201 and 202 of the California Labor Code provide that an employee's wages are due and payable immediately upon the employee's departure.

91. Pursuant to section 203 of the California Labor Code, if an employer willfully fails to pay any wages of an employee who is discharged or who quit, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced.

92. Lind first gave Getty notice of her desire to quit on July 6, 2020, and left her employment on August 31, 2020.

93. However, she has not received her unpaid wages as of the filing of this Complaint, and Getty expressly refused to pay. Getty is therefore liable to Lind for waiting time penalties as required by section 203 of the California Labor Code.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

**TWELFTH CLAIM FOR RELIEF**

**(Violation of Unfair Competition Law—Against All Defendants)**

**[Cal. Bus. & Prof. Code § 17200 *et seq.*]**

94. Lind hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 93, inclusive, of this Complaint, as though fully set forth herein.

95. California Business and Professions Code section 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

96. Getty committed unlawful, unfair, deceptive, and fraudulent business acts as defined by California Business and Professions Code section 17200. Such acts include, without limitation, failing to pay for all hours worked, failing to pay overtime wages, failing to pay minimum wages, failing to provide mandated meal and rest periods, failure to provide accurate itemized wage statements, failing to pay all wages upon Lind's departure, refusing to engage in a good faith interactive process to determine the reasonable accommodations Lind needed for her right hand upon Lind's request, and refusing to provide Lind with reasonable accommodations she needed for her right hand at work.

97. Getty further committed unlawful and fraudulent business practice by flouting California and San Francisco's shelter-in-place orders and requiring Lind to come into the office during lockdown, even though Lind is at higher risk to suffer severe illness from COVID-19 and Lind's job could easily be performed remotely.

98. As a result of this unlawful, unfair, deceptive, and fraudulent business practice, Getty reaped unfair benefits and illegal profits at the expense of Lind. Getty must disgorge these

ill-gotten gains.

WHEREFORE, Lind prays for judgment and relief as set forth in the Prayer below.

### PRAYER

WHEREFORE, Lind prays for judgment in her favor as follows:

1. For damages according to proof at trial;
2. For unpaid wages due under California law;
3. For overtime wages due under California and federal law;
4. For meal and rest period premiums;
5. For restitution of wages, liquidated damages, and civil penalty under section 1197.1 of the California Labor Code for failure to pay minimum wages;
6. For the greater of actual damages according to proof at trial or penalties for failure to provide accurate itemized wage statements under section 226.3 of the California Labor Code;
7. For waiting time penalties under section 203 of the California Labor Code;
8. For damages suffered as a result of Getty's refusal to engage in good faith discussion about accommodation and to provide reasonable accommodation at work;
9. For costs and expenses of this action together with reasonable attorneys' fees and expert fees;
10. For pre-judgment and post-judgment interest at the maximum rate allowed by law;
11. For attorneys' fees and costs of suit herein; and
12. For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Lind demands a trial by jury on all issues and matters so triable under law.

| | | |
|---|---|---|
| 1 | Dated: November 4, 2020 | SLATER LAW GROUP APC |
| 2 | | |
| 3 | | By: _____ |
| 4 | | Mark K. Slater |
| | | Junyong Huang-Stowers |
| 5 | | Attorneys for Plaintiff |
| | | Louise Lind |

-17-

LIND COMPLAINT